**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR-08-1079-PCT-DGC |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| Daniel Joe Kabinto, | ) | |
| Defendant. | ) | |

Defendant is alleged to have stabbed his girlfriend multiple times when she sought to end their relationship. Doc. 1. The government indicted Defendant on September 16, 2008, charging him with assault with a dangerous weapon resulting in serious bodily injury. Doc. 15. Defendant was ordered detained pending trial on the grounds of flight risk and danger to the community. Doc. 8.

On February 23, 2009, the Court issued an order finding Defendant mentally incompetent and committing him to the custody of the Attorney General for treatment in a suitable facility for a reasonable period of time, not to exceed four months. Doc. 39. Due to oversight or clerical error, the order was not received by the Federal Bureau of Prisons medical designator until March 26, 2009, at which time Defendant was assigned to the Federal Medical Center in Springfield, Missouri ("Springfield"). The United States Marshals Service ("USMS") transported Defendant from Arizona to the Federal Transfer Center in Oklahoma City on March 31, 2009. Unfortunately, a high number of prisoners awaiting

placement at Springfield and an ongoing renovation at one of the facility's units further delayed Defendant's arrival until June 5, 2009.

Defendant moved to dismiss the indictment, arguing that the delay in transporting him to Springfield violated his rights under the Due Process Clause. Doc. 45. The Court denied the motion, concluding that there was no showing of outrageous conduct or flagrant misbehavior on the part of the government. The delay resulted from human error and the fact that Springfield was overcrowded. Doc. 60 at 2-3.

In an order entered March 31, 2010, the Court found Defendant mentally incompetent to stand trial and committed him to the custody of the Attorney General for transportation to a suitable facility for the dangerousness evaluation called for in 18 U.S.C. § 4246. Doc. 86. Counsel and the USMS were to be provided hard copies of the order because it was sealed; no electronic notice would be given. *Id.* Counsel received their copies, but no copy was received by the USMS. As a result, Defendant was not transported.

On July 21, 2010, counsel for Defendant learned that Defendant had not been transported to Springfield as ordered. Defendant filed a motion to dismiss the indictment and for his immediate release. Doc. 104. Upon seeing Defendant's motion and learning that Defendant had not been transported, the undersigned contacted all relevant Court personnel and directed them to determine why the Court's order had not reached the USMS. It subsequently was determined that the error occurred when Clerk's office personnel failed to make the order available for the USMS. This was a different error from the error that occurred in February of 2009, and a rare error for the Clerk's office. Although it was quite extraordinary and highly unfortunate that two different errors occurred in the same case, the Court concludes that both were human errors and not systemic problems. In response to the second error, the undersigned asked managers in the Clerk's office and the USMS office to form a committee to develop procedures to ensure that such errors would not occur again. The committee developed procedures that were formally approved by the judges of this district earlier this month. These internal procedures should ensure that similar errors do not occur in the future.

Defendant contends that the delay in transporting him to Springfield violates his due process rights and warrants dismissal of the indictment with prejudice. Doc. 104 at 4-8. Ninth Circuit law identifies two sources of authority for dismissing criminal charges on the basis of government misconduct. The first arises from the Due Process Clause of the Fifth Amendment and is warranted when the government engages in outrageous conduct. The misconduct must be "so grossly shocking and outrageous as to violate the universal sense of justice." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993); *see United States v. Fernandez*, 388 F.3d 1199, 1238 (9th Cir. 2004). The second source of authority is the Court's supervisory power. Dismissal on this basis requires flagrant misbehavior and substantial prejudice to the defendant. *See Kearns*, 5 F.3d at 1253-54; *Fernandez*, 388 F.3d at 1239.

The circumstances of this case do not show outrageous conduct or flagrant misbehavior on the part of the government. The delay in transporting Defendant to Springfield resulted from human error and the limited space at federal medical facilities. Defendant asserts that "delays and reckless disregard of mentally incompetent defendant[s'] rights are more the norm than not." Doc. 104 at 7. The Court does not agree that reckless disregard of mentally incompetent Defendants is the norm, but even if Defendant were to show that transportation delays are common due to general overcrowding at federal medical facilities or errors on the part of the government, that would not justify dismissal of the indictment. *See Kearns*, 5 F.3d at 1255 (holding that even though the government's conduct "may have been negligent, or even grossly negligent," it did not rise to the level of flagrant misconduct); *Fernandez*, 388 F.3d at 1239 (negligent conduct "does not rise to the level required for a finding of a due process violation"). Dismissal is an "extreme" and "disfavored" sanction, "reserved for 'only the most intolerable government conduct.'" *United States v. Owen*, 580 F.2d 365, 367 (9th Cir. 1978); *United States v. Rogers*, 751 F.2d 1074, 1076 (9th Cir. 1985); *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991); *United States v. Lopez*, 4 F.3d 1455, 1464 (9th Cir. 1993); *see also United States v. Struckman*, 611 F.3d 560, 573-74 (9th Cir. 2010) (dismissal not warranted even though the

1 government interfered with the defendant's constitutional right to counsel and induced a
2 foreign government to deport him by lying about his criminal status in the United States);
3 *Fernandez*, 388 F.3d at 1238 (noting that outrageous conduct has been found where "the
4 government has engineered and directed the criminal enterprise from start to finish,' and in
5 'that slim category of cases in which police have been brutal, employing physical or
6 psychological coercion against the defendant'") (citations and brackets omitted).[1]

Defendant's reliance on *Jackson v. Indiana*, 406 U.S. 715 (1972), and *Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003), is misplaced. As the Court previously explained (Doc. 60 at 2), *Jackson* dealt with a defendant's *indefinite* commitment on the ground of incompetency alone. 406 U.S. at 732-33. Defendant's commitment under 18 U.S.C. § 4246 is subject to a 45-day time limit and concerns the risk of danger to the community if Defendant were to be released. Docs. 86, 90. *Mink* was a civil suit for injunctive relief that did not address the standards for dismissing indictments in criminal cases. 322 F.3d at 1107-08. Systemic delays in treating incompetent defendants might well support injunctive relief under *Mink*, a question the Court need not decide, but it does not rise to the level of outrageous or flagrant conduct required for dismissal of the indictment.

Defense counsel urges the Court, as a matter of human decency, to intervene and do something to put an end to delays in transporting of mentally incompetent defendants. Docs. 104 at 4, 106 at 2. As explained above, the Court has taken steps to ensure that errors of the kind that occurred in this case will not occur again. The Court cannot find, however, that the delays in this case were the result of anything other than isolated human errors and

---

[1] Even though the second error was caught by defense counsel in late July and the Court thereafter sought Defendant's immediate transport to a medical facility, a lack of bed space delayed his transport until mid-September. Defendant is now at Springfield, but the overcrowding of federal medical facilities periodically causes delays throughout the federal law enforcement system. The Court acknowledges that this as a problem, and has discussed it with other federal judges and the United States Marshal, who in turn has discussed it with personnel at the Bureau of Prisons. Although a solution for this ongoing problem should be earnestly pursued, the Court concludes that dismissal of the charges in this case is not the solution. The Court cannot find that the delay is caused by the kind of outrageous government conduct that warrants dismissal of an indictment.

limited space at federal medical facilities. Absent outrageous or flagrant misconduct on the part of the government, which has not been shown, the Court will not dismiss the indictment and order Defendant released.

**IT IS ORDERED** that Defendant's motion to dismiss and for his immediate release (Doc. 104) is **denied**.

Excludable delay pursuant to 18 U.S.C. § 3161(h)(1)(D) is found to commence on July 22, 2010 for a total of 69 days.

DATED this 28th day of September, 2010.

David G. Campbell
United States District Judge